UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAN XIONG WANG,

        Plaintiff,

                                      CASE NO. 1:26-cv-0821

v.

                                        HON. ROBERT J. JONKER

PAMELA BONDI et al.,

        Defendants.

_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1).  For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## FACTUAL BACKGROUND

The petitioner in this case is a native and citizen of China.  (Pet., ECF No. 1, PageID.3.) He attempted to enter the United States on March 19, 1994, by using a fake Chinese passport. (Resp., ECF No. 5, PageID.61.)  The falsity of his passport was discovered at the border, and he was detained until April 4, 1994.  (*Id.*)  Upon his release from custody, Petitioner applied for asylum, citing his fear of political persecution if he were to be returned China.  (Pet., ECF No. 1, PageID.5.)  Petitioner's application for asylum was denied, and an immigration judge ordered Petitioner removed.  (*Id.*)  Petitioner's order of removal became final on September 4, 2008.  (*Id.*) In accordance with 8 U.S.C. § 1231(a)(2)(A), the Government detained Petitioner during the

removal period, while attempting to secure travel documents that would allow Petitioner to be removed to China.  (Resp., ECF No. 5, PageID.62.)

On December 1, 2008, ICE completed a 90-day post order custody review.  (*Id.*)  Following that review, ICE decided to release Petitioner under terms of supervision.  (Order of Supervision, ECF No. 5-3, PageID.101.)  One of the terms of Petitioner's release was that he "assist the Immigration and Customs Enforcement in obtaining any necessary travel documents."  (*Id.*)

On January 27, 2026, Petitioner reported to a routine ICE check-in appointment.  At that appointment, ICE revoked Petitioner's conditions of release.  (ECF No. 5-4, PageID.112.)  It cited two reasons for its decision to do so.  (*Id.*)  First, it said that Petitioner had violated the conditions of his release by failing to "willfully obtain a travel document to China."  (*Id.*)  Second, it said that ICE had determined that revocation of the release was "appropriate to enforce the removal order entered against [Petitioner] as ICE has the ability and means to effectuate [his] removal."  (*Id.*)[1] Petitioner has since been held in immigration custody.

**PROCEDURAL BACKGROUND**

On March 13, 2026, Petitioner filed his petition for writ of habeas corpus.  (Pet., ECF No. 1.)  In his petition, he notes that the removal period described in 8 U.S.C. § 1231 begins to run on the day the order of removal becomes final.  (*Id.* at PageID.14.)  Because of this, he argues, the six-month period during which post-removal detention is "presumptively reasonable," *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), also begins to run on the day the order of removal

_____

[1] Petitioner argues that it was unlawful for Respondents to revoke Petitioner's supervised release on the basis that he had violated the conditions of that release by failing to obtain travel documents.  (ECF No. 6, PageID.131–32.)  According to Petitioner, he did everything he could to obtain travel documents, and the fact that China refused to issue them was not within his control.  (*Id.*)  The implication of Petitioner's argument is that the conditions of supervised release were wrongfully revoked.  The Court does not need to consider this argument, however, because the Respondents also indicated that they were revoking the conditions of supervised release in order to enforce the removal order.  Because Respondents have authority under 8 C.F.R. 241.13(i)(2) to revoke an alien's release in order to effectuate a removal, the revocation of release would have been lawful even if the Court concluded that Petitioner had not violated any conditions of his release.

2

becomes final.  (Pet., ECF No. 1, PageID.14.)  Applying this logic to his case, he concludes that the six-month period during which post-removal detention would have been presumptively reasonable ended on March 4, 2009—six months after his order of removal became final.  (*Id.*) Therefore, he concludes, his detention is not currently presumptively reasonable.  (*Id.*)  Moreover, he argues, the government cannot meet its burden of demonstrating that removal is reasonably foreseeable for three reasons: (1) seventeen years have passed without removal; (2) China has consistently refused to accept nationals who sought political asylum in the US; and (3) ICE has not obtained and cannot obtain travel documents from China for Petitioner.  (Pet., ECF No. 1, PageID.15.)

In response, Respondents argue that the statutory framework created by 8 U.S.C. § 1231 allows the Attorney General the discretionary authority to release some aliens under conditions of supervision after the removal period has ended.  (Resp., ECF No. 5, PageID64–68.)  However, according to Respondents, "supervision under section 1231(a)(3) is only available from the time the removal period ends until the Attorney General determines, in his discretion, that it is appropriate to 'enforce a removal order' and attempt to effectuate removal."  (*Id.* at PageID.70.) Moreover, once the Attorney General decides to attempt to effectuate a removal, the six-month period discussed in *Zadvydas* begins to run anew. (*Id.* at PageID.77.)  Therefore, the detention in this case is still presumptively valid.  (*Id.*)  And even if it were not, Petitioner has not shown that "there is no significant likelihood of removal in the reasonably foreseeable future."  (*Id.* at PageID.81.)  Thus, Respondents argue, the petition should be denied.  (*Id.* at PageID.86.)

## HABEAS CORPUS LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue

writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States."  This includes challenges by non-citizens in immigration-related matters.  *See Zadvydas*, 533 U.S. at 687; *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).

## DISCUSSION

The parties agree that Petitioner is subject to a final order of removal and that, as a result, his detention is governed by 8 U.S.C. § 1231 and the framework established by the Supreme Court in *Zadvydas*.  The parties disagree, however, about the outcome required under that framework. Petitioner contends that his continued detention is prohibited under *Zadvydas*, while Respondents argue that *Zadvydas* explicitly authorizes Petitioner's continued detention.  As explained below, the Court believes both parties err in their reading of *Zadvydas*.

To begin, 8 U.S.C. § 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  *Id.* § 1231(a)(2)(A).  Here, as noted above, Petitioner's order of deportation became final on September 4, 2008.  The 90-day removal period following the order therefore expired well before Petitioner filed the present action.  *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6)—which states that an alien ordered removed may continue to be held after the removal period under certain circumstances—authorizes indefinite detention when no other country is willing to take the alien. 533 U.S. at 682.  In answering that question, the Court noted that the purpose of the statute was to assure the "alien's presence at the moment of removal."  *Id.* at 699.  Therefore, the Court concluded

that for post-removal detention to be authorized by the statute, the removal itself must be reasonably foreseeable. *Id.* The Court indicated that this inquiry would vary from case to case and that there was no specific point in time at which the detention would become constitutionally impermissible. *Id.* Still, to assist the lower courts in making the difficult judgment calls about when the detention was no longer authorized by the statute, the Court designated six months as a "presumptively reasonable period of detention." *Id.* at 701. Even after six months has passed, though, the Court made clear that the alien may continue to be held unless the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Here, Petitioner was taken into custody by ICE most recently on January 27, 2026. (Bakko Decl., ¶ 15, ECF No. 5-1, PageID.91.) Petitioner initiated this action on March 13, 2026. (ECF No. 1.) Respondents argue that at the time that Petitioner filed his § 2241 petition, he had not been detained for six months and that his detention was therefore still presumptively reasonable under *Zadvydas*. (Resp., ECF No. 5, PageID.77 (citing *Zadvydas*, 533 U.S. at 700-01).) In Respondents' view, a petitioner must have been in ICE custody for six months on the date the petition is filed in order for the detention to not be considered presumptively reasonable. (*Id.*)

According to Petitioner, Respondents' view makes no sense because it would allow the Government to get around the constitutional issues addressed in *Zadvydas* by simply releasing an alien for short periods every six months. (Reply, ECF No. 6, PageID.126.) Petitioner argues that because such an interpretation of *Zadvydas* is absurd, the six-month period of presumptive reasonableness must always begin to run at the beginning of the removal period. (*Id.* at PageID.128.) Therefore, according to Petitioner, the six-month period during which detention would have been presumptively reasonable in his case ended on March 4, 2009. (*Id.*)

In the Court's view, both parties are too rigid in their approach.  The Supreme Court's central point in *Zadvydas* was that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute."  533 U.S. at 699.  The six-month period during which detention is presumed to be reasonable was established for the purpose of facilitating "uniform administration in federal courts," and the Court referred to it in that sense.  *Id.* at 701. At no point did the Court in *Zadvydas* imply—contrary to Respondent's arguments—that a detainee may not challenge post-removal detention prior to the expiration of the six months.[2] At the same time, though, the Court in *Zadvydas* also did not discuss the six-month window in the way Petitioner suggests—as if re-detention for the purpose of effectuating removal is somehow barred once the alien has accumulated six months of post-removal detention.  Rather, the Court instructed lower courts to consider whether the detention at issue is logically connected to the statute's basic purpose, which is to assure "the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699.  The thrust of *Zadvydas* is that the constitutionality of detention for people subject to final orders of removal depends on a practical and flexible assessment of factors, not a mechanical set of counting rules.

Moreover, even if the Court assumes for the sake of argument that Petitioner's detention is no longer presumptively reasonable under *Zadvydas*, it is still the petitioner's burden to come forward with evidence showing that removal is not significantly likely to occur sometime soon. *Id.*  Only after the petitioner has come forward with such evidence does the burden flip to the

---

[2] Many courts have recognized that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before" the six-month period of presumptive reasonableness has expired.  *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018).  As these courts have explained, during the six-month period of detention, "[t]he presumption of reasonableness is the default," which means that, "[i]n practical terms, before the six-month period elapses, the government bears no burden to justify detention."  *Munoz-Saucedo*, 789 F. Supp. 3d at 397.  Still, the presumption remains just that—a presumption.  Thus, "if a person 'can prove' that his removal is not reasonably foreseeable"—even before the six months have run—"then he can overcome that presumption."  *Id*.

respondents, who must then show evidence that the removal is, in fact, reasonably foreseeable. *See Abdalla v. Johnson*, No. 16-14422, 2017 WL 345731, at *4 (E.D. Mich. Jan. 24, 2017) (rejecting Petitioner's claim that detention of more than a year violated *Zadvydas* when the petitioner "provide[d] no evidence" that removal was unlikely to occur in the near future).

Here, Petitioner has raised three points to support his contention that removal is not reasonably likely to occur anytime soon: (1) seventeen years have passed since his order of removal became final and Respondents have not been able to effectuate his removal in that time; (2) China has consistently refused to accept nationals who sought political asylum in the US; and (3) ICE has not obtained and cannot obtain travel documents from China for Petitioner. (Pet., ECF No. 1, PageID.15.) Even assuming—again, for the sake of argument—that such evidence is sufficient to allow Petitioner to satisfy his burden under *Zadvydas*, the government has responded by raising three points of its own: (1) ICE has had success removing hundreds of people to China over the past two years; (2) ICE submitted a complete travel document request for Petitioner; and (3) ICE is regularly following up on the request and expects that it will occur within the next three months (ECF No. 5, PageID.81). These points are sufficient to allow the Court to conclude that, at this point in time, Petitioner is not in the state of "indefinite, perhaps permanent, detention" that the Court in *Zadvydas* said would violate the constitution. *Zadvydas*, 533 U.S. at 699; *see also Martinez v. Larose*, 968 F.3d 555, 565 (6th Cir. 2020) (holding that a detention of over two years was constitutionally permissible because the removal was likely to occur once Petitioner's appeals were concluded).

The Court recognizes that continued detention may, over time, come to resemble the kind of indefinite confinement that *Zadvydas* would not permit. "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely [has] to shrink."

*Zadvydas*, 533 U.S. at 701.  Courts applying this principle recognize that even where the Government continues to pursue removal in good faith, the passage of time can eventually erode the reasonableness of continued detention.  *See Martinez*, 968 F.3d at 565 (explaining that prolonged detention may become unreasonable if the petitioner later demonstrates that removal is no longer likely).

Here, however, the Court is not yet faced with that situation.  At this point, it seems to the Court that Petitioner's removal remains significantly likely in the reasonably foreseeable future. Accordingly, the petition will be denied without prejudice. Should the Government's efforts to secure removal ultimately stall or fail to bear fruit, Petitioner remains free to file a new petition asserting that continued detention is no longer reasonable.

## CONCLUSION

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:    April 24, 2026                          /s/ Robert J. Jonker
                                                  Robert J. Jonker
                                                  United States District Judge